UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
BARRY NATHANSON,

                    Plaintiff,

                                        MEMORANDUM AND DECISION
          -against-                     10-CV-2643 (JS)

GRAND ESTATES AUCTION CO.,

                    Defendant.
--------------------------------X
APPEARANCES:
For Plaintiff:      Peter M. Khrinenko, Esq.
                    Brand, Glick & Brand, P.C.
                    600 Old Country Road, Suite 440
                    Garden City, NY 11530

For Defendant:      Joel Steven Schneck, Esq.
                    Goldberg Rimberg, PLLC
                    115 Broadway, Suite 302
                    New York, NY 10006

SEYBERT, District Judge:

        On June 10, 2010 Plaintiff Barry Nathanson ("Nathanson" or "Plaintiff") commenced this action against Grand Estates Auction Company ("Grand Estates" or "Defendant"). Plaintiff's Complaint alleges causes of action pursuant to New York General Business Law §§ 349, 350, common law fraud and deceit, breach of contract, "breach of duty", negligence, misrepresentation, and tortious interference with Plaintiff's prospective business advantage.

        Pending before the Court is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7), requesting that the Court dismiss the Complaint in its entirety and Fed. R. Civ. P. 12(b)(6), requesting that the Court dismiss each cause of action for failure to state a claim upon which relief can be granted. For

the following reasons, Defendant's motion is GRANTED. Plaintiff's Complaint is dismissed with leave to re-plead his fraud claim.

<u>BACKGROUND</u>[1]

In 2009, Plaintiff, a resident of Great Neck, New York, was in the market for real estate. Defendant, which is in the business of auctioneering deluxe real estate, markets and conducts auctions in the State of New York. (Compl. ¶¶ 2-5.)

All of Plaintiff's causes of action concern an auction for real estate located in Matinecock, New York (hereinafter referred to as "Property"). The auction, held at the Property on November 17, 2009, was advertised by the Defendant (in its role as the seller's agent) as a so-called "absolute" auction, or an auction "without reserves." (Compl. ¶ 10.) These terms of art denote that the subject of an auction will be sold to the highest bidder whether or not the seller's ideal price, or even the prevailing market price, is fetched. (Compl. ¶ 13.) Defendant's advertisements for the auction spelt out in layman's terms the meaning of an absolute auction, alerting potential buyers that the auction would constitute the "only opportunity to purchase [Property] at your own price." (Compl. ¶ 13.)

An appreciation of the auction's basic rules is vital in assessing Plaintiff's claims. To participate in the auction

---

[1] The facts included in this section are alleged by Plaintiff and regarded as true for the purpose of this motion.

2

potential buyers had to comply with certain rules provided by Defendant. Every bidder on the Property, for example, was required to preregister and present a certified check for $50,000 on pain of being excluded. (Compl. ¶ 14.) For those participants who wished to place bids remotely via telephone, certain additional requirements were imposed, including the submission of a complete "Bidder Statement", signed preliminary terms and conditions, and a filled out phone-bidding procedure slip. Only upon receipt of these documents would a remote bidder be empowered to participate in the auction. (Compl. ¶¶ 15-16.)

Immediately after being declared the auction's winner, the highest bidder would be required to place a ten percent down payment on the Property with the balance due in cash at closing, which would take place within thirty days of the auction. No real estate contract would be signed before a winner be declared. (Compl. ¶ 17.)

At around 2 p.m. Defendant began crying the auction. Despite the presence of more than a dozen bidders competing for several rounds, Plaintiff proved the highest bidder with a sum of $4,000,000. Even as Defendant aggressively exhorted the others to top Plaintiff's bid, the "live" bidders blinked at the price. To all participating in the auction it became clear that Plaintiff's bid entitled him to the Property; the rules of an absolute auction dictated that no other result was possible. (Compl. ¶¶ 19-24.)

At this moment a remote, unidentified bidder phoned in. Though the prevailing highest bid was $4,000,000, the mysterious caller bested it with an offer of $5,000,000 – a full million dollars over Plaintiff's and unprompted by competitive counterbids. This bidder, who had not registered to participate in the action and failed to submit the requisite $50,000 registration fee, was promptly declared the winner by Defendant. The bidder neither submitted the ten percent down payment required by the Defendant's rules, nor executed a real state contract with the seller. The seller never closed on the property with the winning bidder. (Compl. ¶¶ 25-37.)

Sometime thereafter the seller sold the Property outside the auction for an amount in excess of $6,000,000 to an unidentified buyer. (Compl. ¶ 48.)

The gravamen of Plaintiff's Complaint is that the winning bidder was a shill (a fictitious bidder), acting on behalf of the Defendant, whose final bid of $5,000,000 was designed either to spur Plaintiff to increase his bid or to enable Defendant impermissibly to withdraw the Property from an auction billed as one without a reserve price.

Although Plaintiff alleges that Defendant's commission consisted of 7.5% of the purchase price (Compl. ¶ 18), which would plainly amount to no commission at all in the case of a fictitious bidder, he also alleges that by engineering this deception

Defendant was unjustly enriched in some unspecified way. (Compl. ¶ 60.)

Never clearly set out in the Complaint, the monetary loss sustained by Plaintiff as a result seems entirely to consist of the rough difference between his $4,000,000 bid for the Property and the approximate price (more than $6,000,000) at which it was eventually sold several months after the rigged auction. (Plaintiff's $50,000 registration fee was returned.) In other words, Plaintiff requests that he be placed in the position he would have been in had his contract[2] with the seller not been breached.

DISCUSSION

## I. Standard Of Review Under Rule 12(b)(6)

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1953, __ L. Ed. 2d. __ (2009)

---

[2] The Court need not, and does not, take a position on the question whether Plaintiff's alleged fully formed contract with the seller, who is not named as a defendant, is legally binding in spite of Statute of Frauds problems.

(reversing the Second Circuit's decision in <u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal citations and quotations omitted). Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim. <u>Id.</u> In applying the plausibility standard set forth in <u>Twombly</u> and <u>Iqbal</u>, a court "assume[s] the veracity" only of "well-pleaded factual allegations," and draws all reasonable inferences from such allegations in the plaintiff's favor. <u>Id.</u> Pleadings that "are no more than conclusions," however, "are not entitled to the assumption of truth." <u>Id.</u>

II.  <u>Plaintiff's Claims</u>

    A.  <u>New York General Business Law §§ 349, 350</u>

        Plaintiff's first cause of action contends that Defendant's promise to "customers and consumers of its services" that an absolute auction would take place, coupled with its

6

subsequent use of a shill bidder, violated the prohibition against deceptive business practice found in New York General Business Law § 349.

As a consumer protection act, Section 349 covers, and is focused on, "recurring transactions of a consumer type." Netzer v. Continuity Graphic Associates, Inc., 963 F. Supp. 1308, 1323 (S.D.N.Y. 1997). For that reason "private transactions not of a recurring nature or without ramifications for the public at large" typically fall outside the section's ambit. Genesco Entertainment v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984). If the complained of conduct is not of a recurring nature, it must then have "a broad impact on consumers at large." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).

Here, Plaintiff's Complaint contains not a single factual allegation that the Defendant's allegedly deceptive conduct was part of a larger pattern of deception which affects the public at large. As pleadings that are nothing more than legal conclusions, Plaintiff's bald allegations that "Defendant's acts were misleading in a material way injuring the Plaintiff and the general public at large" and that "Defendant's deceptive practices were used to unfairly bait the public into attending the absolute auction" are not entitled to the assumption of truth. See Iqbal, 129 S. Ct. at 1953.

Plaintiff, for example, does not allege that the

Defendant used the shill bidder device to escape an absolute auction on any other occasion to the injury of the public. More to the point, and his legal conclusions aside, Plaintiff fails even to allege facts showing that the shill deception injured the public interest in this particular case; having cast himself as the auction's bona fide highest bidder, he does not and cannot allege that the other bidders were injured through the shill's "win" at the auction: absent the shill, Plaintiff would have taken the Property, not other members of the public. This does not constitute an injury to the public at large.

Plaintiff's second cause of action, his Section 350 claim of false advertising, fails for the same defect. If such a claim does not allege that the conduct complained of is recurring, then it must allege that its impact on consumers at large is broad. See N.Y. Univ., 87 N.Y.2d at 320. Again, alleging as he does that he was the highest bidder but for the shill, he does not and cannot also allege that the other bidders were injured through the shill's "win" at the auction.

Accordingly, Plaintiff's New York General Business Law §§ 349, 350 claims are DISMISSED with prejudice.

B.     Common Law Fraud, Deceit, And Misrepresentation

To properly plead a common law fraud claim under New York law, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by

8

defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). As for the injury element, New York law adheres to the "out-of-pocket rule" under which there can be no recovery of profits "which would have been realized in the absence of fraud." <u>Id.</u> Instead, what must be alleged to state a fraud claim is actual pecuniary loss. <u>See</u> <u>Spencer Trask Software and Information Services LLC v. RPost Int'l Ltd.</u>, 383 F. Supp. 2d 428, 457 (S.D.N.Y. 2003).

Here the Plaintiff's only allegation of injury in the Complaint is the statement that he sustained a monetary loss in the amount of at least $2,000,000, exclusive of costs, attorneys' fees and interest. Given that Plaintiff's $50,000 registration fee was returned, that Plaintiff's bona fide bid was $4,000,000 and that the Property eventually sold for at least $6,000,000, the Court can only assume that the monetary loss reflects Plaintiff's estimation of the amount he stood to gain absent Defendant's fraud and not Plaintiff's out-of-pocket injury. Recovery for the amount Plaintiff stood potentially to gain from the acquisition of the Property lies rather in a breach of contract claim than in a claim of common law fraud. <u>Id</u>; <u>see</u> <u>also</u> <u>Rappaport v. Buske</u>, 2000 WL 1224828, *9 (S.D.N.Y. Aug. 29, 2000) (finding no actionable fraud

claim where plaintiff's allegation of damages did not reflect out-of-pocket pecuniary loss but rather an amount the plaintiff stood to gain in the absence of fraud).

Plaintiff's misrepresentation claim likewise fails by operation of the out-of-pocket rule. <u>See Starr Foundation v. AIG, Inc.</u>, 76 A.D.3d. 25, 901 N.Y.S.2d 246, 249, (N.Y. App. Div. 1st Dept., 2010).

Accordingly, Plaintiff's fraud, deceit and mis-representation claims are DISMISSED without prejudice to Plaintiff's ability to re-plead pecuniary loss, if any, that he suffered out-of-pocket.

C.    <u>Breach Of Contract</u>

Plaintiff's Complaint alleges that Defendant's advertisement for an absolute auction and Plaintiff's winning bid respectively constituted the offer and acceptance of an enforceable contract for the sale of the Property; and that Defendant breached the contract by its deceptive and fraudulent practices during the auction. Notably absent from the Complaint in general and this claim in particular is any acknowledgment of Defendant's role as an agent for the seller with whom Plaintiff purportedly contracted, if indeed there even was a legally binding contract. Put another way, Plaintiff's Complaint offers no unequivocal indication of whom he believes he contracted with for the sale of the Property. And the Property's seller, of course, is not named as a defendant.

Puzzlingly, in his Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Plaintiff offers the Court an exposition of an absolute auction's rules in which he writes that a contract is consummated between the <u>seller</u> and the bidder with each bid, subject only to higher bids being received. <u>See</u> Pl.'s Mem. in Opp. to Mot. to Dismiss, at 9. With this explanation, Plaintiff seems to appreciate that any contract formed must be between the bidder and the seller, not the auctioneer. Yet he pursues his contract claim against the auctioneer, an agent of the seller.

Under basic New York agency law, when an agent acts on behalf of a disclosed principal, the agent cannot be made personally liable for a breach of contract "unless there is clear and explicit evidence of the agent's intention to be personally bound." <u>American Diabetes Ass'n v. Abbey, Mecca & Co., Inc.</u>, __ N.Y.S.2d __, 2010 WL 3817370, (N.Y. App. Div. 4th Dept., 2010). Conversely, an agent acting on behalf of an undisclosed principal can be made personally liable for a breach of contract. <u>Id.</u>

Here, Plaintiff has failed to allege in the Complaint the existence of an undisclosed principal. To the contrary, he has pled facts that, if anything, imply the opposite was true: the auction was held at the seller's residence--a rather awkward choice of auction location for a seller who wishes to remain undisclosed (Compl. at ¶ 14.) Nor does Plaintiff allege that Defendant

manifested its intention to be personally bound on the real estate contract. More perplexing still, Plaintiff, seemingly taking a leaf from Defendant's brief, argues in his opposition that "Grand Estates is <u>not</u> being sued as someone's agent; it is being sued for its own actions." <u>See</u> Pl.'s Mem. in Opp. to Mot. to Dismiss, at 16.

In the absence of such an undisclosed principal allegation, Plaintiff's contract claim, whatever its merits, lies against the seller of the Property. <u>See</u> <u>Seguros Banvenez, S.A. v. S/S Oliver Drescher</u>, 761 F.2d 855, 860 (2d Cir. 1985). Accordingly, the claim is DISMISSED.

    D.   <u>Breach Of The Duty To Conduct A Fair Auction And Negligence</u>

Plaintiff's eighth cause of action is for negligence; closely related, his sixth claim makes the titular allegation of a "breach of duty." Though the type of claim Plaintiff wishes to allege here is unclear from the title, he elaborates in paragraph 101 of the Complaint that the "Defendant had a legal duty <u>to the general public</u>, including the Plaintiff, to conduct an auction in a fair manner." (Compl. ¶ 101.) (Emphasis added.)

New York law does recognize a cause of action for breach of the duty to conduct a fair auction. <u>See</u> <u>Solow v. Conseco, Inc.</u>, 06-CV-5988, at 7 (S.D.N.Y. Jan. 11, 2008) <u>citing</u> <u>Valeo Engine Cooling v. Guy F. Atkinson Co.</u>, 240 A.D.2d 176, 177 (N.Y. App. Div. 1st Dep't 1997). (The Court notes, however, that the contours of

this duty are hazily defined, the <u>Valeo</u> decision seemingly being the only one to recognize the duty's existence.)

However, the <u>Valeo</u> court drew a distinction between the "ordinary" auction which "entails a public sale of property to the highest bidder, conducted by receiving competitive oral bids" and a "private auction to selected potential purchasers who submitted written bids;" only the latter triggers the duty. <u>Valeo Engine Cooling</u>, 240 A.D.2d at 177. There, the plaintiff alleged such a private auction before the commencement of which all parties had agreed in writing to a non-public bidding process. <u>Id.</u> Moreover, the plaintiff particularly alleged damages not consisting of lost profits but rather of money spent "investigating and evaluating" the subject of the auction. <u>Id.</u> Plaintiff's claim in that case was directed against the seller. <u>Id.</u>

So far from alleging such a private auction, Plaintiff explicitly alleges the violation of a duty owed by the auctioneer <u>to the public</u>. <u>See</u> Compl. ¶ 101. Thus Plaintiff's claim is incompatible with the Appellate Division's description of the auction duty. Accordingly, Plaintiff's "breach of duty" claim is DISMISSED.

    E.   <u>Tortious Interference With A Prospective Business Advantage</u>

The title of Plaintiff's tenth cause of action notwithstanding--"Tortious and Intentional Interference with Plaintiff's <u>Business Relations</u>"--he argues in his opposition that

the claim is actually one for interference with <u>future</u> economic advantage. <u>See</u> Pl.'s Mem. in Opp. to Mot. to Dismiss, at 23. By way of explaining the discrepancy, Plaintiff states that "the scope of [sic] tort of interference with prospective economic advantage is broader than the tort of interference 'with contractual relationship'". <u>Id.</u>

This description of the distinction between the two torts is arguably at variance with the pertinent law in the Second Circuit. <u>See</u> <u>PKG Group, LLC. v. Gamma Croma, S.p.A</u>, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) (observing that the tort of interference with a prospective business advantage has requirements more demanding than those for the tort of interference with the performance of an existing contract).

To appreciate the strangeness of this claim in the circumstances presented by the Complaint, it is instructive to review the idea on which the tort is based. As defined by the Second Circuit, the quintessential example of an interference with a prospective business advantage is where:

> A claims that C interfered with A's prospective economic relationship with B. Often, C is a market competitor of A, and thus C's actions are aimed at luring B away from A, so that C, itself, can enter into an economic relationship with B. <u>Carvel Corp. v. Noonan</u>, 350 F.3d 6, 17 (2d Cir. 2003).

It is implicit in the fundamental nature of the tort, then, that C is not an agent operating on behalf of B. For if C

were, then the third-party would not be responsible for the breakdown in economic relations as much as would B, C's principal. Here, moreover, Defendant is not a market competitor of Plaintiff.

To properly plead a cause of action for intentional interference with prospective business advantage a plaintiff must allege that (1) the defendant knew of the proposed contract between the plaintiff and a third party; (2) the defendant intentionally interfered with the proposed contract; (3) the proposed contract would have been entered into but for defendant's interference; (4) the defendant's interference was done in a wrongful manner; (5) the plaintiff sustained damages. See Allocco Recycling, Ltd. v. Doherty, 378 F. Supp. 2d 348, 375 (S.D.N.Y. 2005).

Here Plaintiff fails to allege that "but for" the Defendant's interference the prospective contract for the Property would have been consummated. On the contrary, Plaintiff's Complaint amply demonstrates why, if his allegations are correct, his contract with the seller was in fact consummated: "Plaintiff Nathanson's $4,000,000 bid was the highest bid." And according to Plaintiff's exposition of the principles of an absolute auction in his opposition brief, a contract is necessarily formed between the seller and the auction's highest bona fide bidder. See Pl.'s Mem. in Opp. to Mot. to Dismiss, at 9. If, as Plaintiff alleges, the winning bid of $5,000,000 was made by a shill, at the moment Plaintiff made his $4,000,000 bid he became the highest bona fide

bidder and was therefore in contract with the seller. Thus Plaintiff is not alleging that but for Defendant's conduct a contract would have been consummated.

Accordingly, Plaintiff's tortious interference with a prospective business advantage claim is DISMISSED.

CONCLUSION

Because there was an agreement and stipulation between the parties to withdraw the Plaintiff's fourth cause of action, no claims remain in Plaintiff's Complaint. Defendant's Fed. R. Civ. P. 12(b)(1) and 12(b)(7) motions are therefore moot. For the reasons stated herein, the Defendant's motion to dismiss is GRANTED without prejudice to Plaintiff's ability to re-plead his fraud claim.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    November __23__, 2010
          Central Islip, New York